DECISION
{¶ 1} Relator, Johnnie Alston, has filed an original action requesting this court to issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying his application for permanent total disability ("PTD") compensation and asking this court to find that he is entitled to PTD compensation pursuant to State ex rel. Gay v. Mihm (1994), 68 Ohio St.3d 315. Relator also requests in the alternative, a writ ordering the commission to vacate its order denying his application for PTD compensation and to conduct a new hearing.
{¶ 2} This matter was referred to a magistrate of this court pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. On June 21, 2002, the magistrate issued a decision, which included findings of fact and conclusions of law, and recommended that this court deny relator's request for a writ of mandamus. (Attached as Appendix A.) Relator has filed two objections to the magistrate's decision.
{¶ 3} Relator argues in his first objection that the order of the commission does not comply with State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203 or the order of the Ohio Supreme Court in State ex rel. Alston v. Indus. Comm. (2000), 88 Ohio St.3d 503. Relator argues in his second objection that the commission failed to provide a fair hearing and that Gay relief is proper.
{¶ 4} We first note that a review of relator's objections shows that he failed to object to any errors of fact or law in the magistrate's decision as required by Civ.R. 53(E)(3)(b). "Civ.R. 53(E) imposes an affirmative duty on the parties to make timely, specific objections in writing to the trial court, identifying any error of fact or law in the magistrate's decision." Huffman v. Huffman (June 21, 2000), Mahoning App. No. 98 CA 136.
{¶ 5} Additionally, the Ohio Supreme Court's decision regarding the present case simply stated: "The judgment of the court of appeals is reversed, and the cause is returned to the Industrial Commission for compliance with State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203, 567 N.E.2d 245." Alston, at 503. The syllabus of Noll states: "In any order of the Industrial Commission granting or denying benefits to a claimant, the commission must specifically state what evidence has been relied upon, and briefly explain the reasoning for its decision." Therefore, relator is incorrect in his assumption that the Ohio Supreme Court's decision mandated a new hearing or a completely new order. A review of the commission's order after the Ohio Supreme Court's remand shows that the new order complies with the requirements of Noll and relator is not entitled to relief pursuant to Gay.
{¶ 6} After an independent review of the stipulated evidence, an examination of the magistrate's decision, and due consideration of relator's objections, this court overrules relator's objections and adopts the findings of fact and conclusions of law contained in the magistrate's decision. Since the magistrate sufficiently discussed and determined the remaining issues raised by relator in his objections, further discussion is not warranted. Accordingly, relator's request for a writ of mandamus is denied.
Objections overruled; writ denied.
LAZARUS and KLATT, JJ., concur.
 APPENDIX A IN MANDAMUS
{¶ 7} Relator, Johnnie Alston, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied his application for permanent total disability ("PTD") compensation and asking this court to find that he is entitled to PTD compensation pursuant to State ex rel. Gay v. Mihm (1994),68 Ohio St.3d 315. In the alternative, relator requests that the commission be ordered to vacate its order denying his application for PTD compensation and ordering the commission to conduct a new hearing to properly determine relator's application.
Findings of Fact:
{¶ 8} 1. On September 4, 1987, relator was injured in the course of and arising out of his employment as a truck driver. His claim has been allowed for: "Posterior subluxation L5 with associated acute lumbar strain; substantial aggravation of degenerative arthritis of lumbar region."
{¶ 9} 2. On November 26, 1996, relator filed an application for PTD compensa-tion.
{¶ 10} 3. In support of his application for PTD compensation, relator submitted the December 18, 1995 report of Dr. John L. Wetzel who opined that relator had a 50 percent whole body impairment and noted further that relator can expect continued low back pain which will increase in frequency, intensity, and duration. Dr. Wetzel noted further that relator will require periodic treatment for the remainder of his life as relapses, exacerbations, and degeneration occur.
{¶ 11} 4. Relator also attached the September 9, 1996 report of Dr. George H. Burroughs who assessed a 50 percent whole person impairment and noted that relator's impairment prevents him from seeking physically demanding employment such as driving a truck. Dr. Burroughs concluded as follows: "In my opinion, Mr. Alston's current physical condition and socioeconomic background renders him as permanently and totally disabled from sustained and remunerative employment."
{¶ 12} 5. Relator was examined by Dr. Raymond R. Fletcher who issued a report dated March 25, 1997. Dr. Fletcher concluded as follows:
 I am in agreement with the patient's work-up and treatment in the past few years. I agree with the Maximum Medical Improvement date of 09/25/90 with a 12% whole body Permanent Physical Impairment. I also agree with the 25 pound repetitive lifting limit. I feel that this patient would not be able to return to his previous type of employment, driving a truck, or any kind of activity which would require repetitive bending, lifting, stooping, or twisting, or prolonged standing, walking, or sitting. I would place this patient['s] work activities in the light category. This patient is expected to have continued complaints of chronic lower back pain and right sciatica. At this time, I feel that he needs an MRI scan of the lumbar spine to evaluate the degree of spinal stenosis at the L4-5 level. * * *
{¶ 13} Dr. Fletcher completed an occupational activity assessment wherein he opined that relator could sit, stand and walk for zero to three hours a day; could lift, carry, push, pull, or otherwise move up to ten pounds for three to five hours and up to 20 pounds for zero to three hours; could occasionally climb stairs, use foot controls, crouch, stoop, bend, kneel, handle objects, and reach overhead, at waist, knee, and floor level; and was precluded from climbing ladders.
{¶ 14} 6. Relator submitted a vocational report from Karen J. MacGuffie, M.A., C.R.C., dated August 11, 1997. Ms. MacGuffie opined that relator would have a very difficult time obtaining unskilled sedentary work. She noted that his difficulty with reading, writing and arithmetic would make it difficult for him to compete for such jobs in general clerical or cashiering which would remove approximately 35 percent of the available jobs from relator. Ms. MacGuffie also opined that it was questionable whether relator could compete for jobs requiring production or assembly tasks as he has never attempted this type of work before. She also noted his age, limited education, and his lack of transferable skills and opined that he is permanently and totally disabled.
{¶ 15} 7. An employability assessment was prepared by Robert E. Breslin, M.S., C.R.C., and dated July 23, 1997. Based upon the report of Dr. Burroughs, Mr. Breslin opined that relator was not employable. Based upon the report of Dr. Wetzel, Mr. Breslin concluded that there was insufficient evidence from which he could form an employability assessment. Based upon the medical report of Dr. Fletcher, Mr. Breslin opined that relator could immediately perform the following jobs:
 * * * Surveillance System Monitor; Assembler; Production Inspector; Order Clerk, Food Beverage; Hand Packager; File Clerk; Sales Clerk, Retail Trade.
{¶ 16} Following academic remediation or brief skill training, Mr. Breslin opined that relator could perform the following additional jobs: "Information Clerk; Reservation Clerk; Dispatcher." Mr. Breslin opined that relator's age would not be a factor in seeking new employment, that his limited education may eliminate some entry-level jobs, and that his work history may make it difficult for him to adjust to new work demands and work environments. Mr. Breslin also noted that there is no evidence in the background data that claimant could not be expected to develop academic or other skills required of entry-level work.
{¶ 17} Relator submitted interrogatories to Mr. Breslin which he answered. In those answers, Mr. Breslin noted that the positions listed in his report are unskilled and semi-skilled jobs for which relator is qualified with brief on-the-job training and which do not require a high school education or academic remediation as a prerequisite. Mr. Breslin also explained that an employment assessment addresses the issue of employability which identifies work that exists in the Ohio economy which claimant can reasonably be expected to perform in light of his capabilities and functional limitations resulting from the allowed conditions. Mr. Breslin noted that an employment assessment does not consider "placability" which addresses the issue of whether an individual can actually secure this employment. This answer was in response to relator's question of whether Mr. Breslin believed that relator would actually be able to secure any of the employment positions which Mr. Breslin had listed in his report.
{¶ 18} 9. Relator's application was heard before a staff hearing officer ("SHO") on February 17, 1998. Relator's application was denied based upon testimony adduced at hearing, the medical findings and opinions of Dr. Fletcher, and the findings and opinions set forth in Mr. Breslin's employability assessment report and elaborated in his answers to interrogatories.
{¶ 19} 10. Relator's request for reconsideration was denied by order of the commission dated March 20, 1998. Relator filed a mandamus action in this court alleging an abuse of discretion.
{¶ 20} 11. This court referred the matter to a magistrate for hearing. The magistrate recommended that relator's request for a writ of mandamus be denied. The court adopted the magistrate's decision.
{¶ 21} 12. Relator appealed as a matter of right to the Ohio Supreme Court which reversed this court and returned the matter by stating, in full, as follows:
 This cause, here on appeal from the Court of Appeals for Franklin County, was considered in the manner prescribed by law. On consideration thereof, the judgment of the court of appeals is reversed, and the cause is returned to the Industrial Commission for compliance with State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203, 567 N.E.2d 245.
 It is further ordered that the appellant recover from the appellee his costs herein expended; and that a mandate be sent to the Court of Appeals for Franklin County to carry this judgment into execution; and that a copy of this entry be certified to the Clerk of the Court of Appeals for Franklin County for entry.
{¶ 22} 13. Upon remand, this court issued the following judgment entry:
 Pursuant to the mandate of the Supreme Court of Ohio in case No. 99-1901, decided May 24, 2000, reversing the judgment of this court, the journal entry of judgment journalized on September 14, 1999, is vacated and the matter is returned to the Industrial Commission for compliance with State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203, consistent with the opinion of the Supreme Court.
{¶ 23} 14. Pursuant to the mandate of the Ohio Supreme Court and this court, the commission vacated its prior order denying relator's application for PTD compensation, referred the matter to the hearing administrator for appropriate review and for scheduling of a hearing on the issue of relator's November 26, 1996 application for PTD compensa-tion.
{¶ 24} 15. Relator's application was heard before an SHO on July 11, 2000, and resulted in an order denying his application. The SHO relied upon the medical report of Dr. Fletcher and concluded that relator was capable of work within the range of light and sedentary work as defined in Ohio Adm. Code 4121-3-34. The SHO also relied upon the employability assessment prepared by Mr. Breslin as well as Mr. Breslin's responses to interrogatories. (The SHO's order can be found at pages 66 through 70 of the record for the court's review.)
{¶ 25} 16. Relator's appeal was refused by order of the commission mailed September 13, 2000.
{¶ 26} 17. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
{¶ 27} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986),26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
{¶ 28} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments but, also, the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephenson v. Indus. Comm. (1987),31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. Gay, supra. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203.
{¶ 29} Relator challenges the commission's order in six respects: (1) the commission abused its discretion when it failed to properly rehear relator's application for PTD compensation upon remand from the Ohio Supreme Court; (2) the commission abused its discretion when it relied upon a vocational expert who stated that relator was "employable" but not "placable"; (3) the commission abused its discretion by basing its decision, in part, on relator's failure to perform a job search within his restrictions; (4) the commission abused its discretion when it relied on a vocational expert who had no actual contact with relator; (5) the commission abused its discretion when it failed to explain why the opinion of relator's vocational expert was not relied upon; and (6) the commission abused its discretion by not granting his application for PTD compensation. For the reasons that follow, this magistrate disagrees.
{¶ 30} Relator contends that the commission was required to hold a new hearing when the matter was remanded to the commission following the decision of the Ohio Supreme Court. However, relator is mistaken. Nothing in the Ohio Supreme Court's decision orders that the matter be reheard. The matter was remanded on the basis that the commission's prior order did not comply with the requirements of Noll which mandates that the prior order be vacated and that the commission issue a new order which provides the requisite explanation as required. A new hearing simply was not ordered. Part of relator's argument focuses on the fact that the July 11, 2000 order resembles, in many respects, the prior order dated February 17, 1998, with the exception that the new order now arguably complies with Noll.
{¶ 31} Nothing in the Noll decision addressed the requirement of a new hearing. However, in the present case, a new hearing was held. Relator contends that the hearing should not have been in front of the same SHO who held the first hearing; however, although relator objected, he proceeded with the rehearing before the same SHO, apparently waiving any objection. The commission then issued a new order, admittedly an order very similar to the first order; however, with changes necessary in order to comply with the mandate of the Ohio Supreme Court that the order comply with Noll. Relator's first argument is not well-taken.
{¶ 32} Relator next argues that the commission abused its discretion when it relied on a vocational expert who indicated that he was not "placable" in the job market. In his employability assessment, Mr. Breslin listed several jobs which relator could immediately perform or could perform with some academic remediation or on-the-job training. In the interrogatories placed to him, Mr. Breslin was specifically asked by relator the following question:
 * * * In your opinion, would a sixty-three year old male, with a seventh grade education, having last attended school in 1949, a job background such as Mr. Alston's and a ten year absence from the workforce, be able to secure sustained remunerative employment as any of the following, and if so, what type of retraining would be involved[?]
{¶ 33} Thereafter, relator listed the jobs which Mr. Breslin had indicated relator was physically capable of performing. In response to that interrogatory, Mr. Breslin indicated that relator would require one to three months of on-the-job training for each of the jobs he listed and stated further as follows:
 The purpose of an Employability Assessment is to identify work that exists in the Ohio economy which the claimant can reasonably be expected to perform given his or her capabilities and in light of the functional limitations related to the allowed condition. Whether an individual can "secure" this employment does not speak to the issue of employability but, rather, to "placability."
{¶ 34} Relator contends that the distinction between the terms "placable" and "employable" is little more than semantics and undermines the purpose of PTD compensation. This magistrate disagrees.
{¶ 35} The standard for evaluating a PTD application is whether or not claimant has the capacity to engage in sustained remunerative employment. Relator asks this court to change the focus from whether or not he could physically perform certain work to whether or not an employer would actually hire him so that he could procure a job. Such is not the standard for reviewing a PTD application. Mr. Breslin concluded that, both from the standpoint of his physical limitations as well as the nonmedical disability factors, relator could perform certain identified jobs. Although Mr. Breslin noted that relator was not a candidate for a formal education program, he was amenable to brief on-the-job training. The commission relied on Mr. Breslin's assessment. Relator's argument is not well-taken.
{¶ 36} Relator next challenges the commission's order because the commission based its decision denying his application for PTD compensation in part on relator's failure to perform an adequate job search. In its order, the commission noted that relator had received temporary total disability benefits from September 4, 1987 until March 12, 1992, when he was found to have reached maximum medical improvement. Thereafter, relator received nonworking wage loss benefits from March 13, 1992 until January 11, 1996, the expiration of the statutory 200 weeks. During the time that relator received nonworking wage loss compensation, he exclusively looked for driving positions and made no attempt to look for any other type of job in a lighter duty capacity either unskilled or semi-skilled. Relator claims that the commission abused its discretion by relying in part on his failure to look for other work. This magistrate disagrees.
{¶ 37} In State ex rel. Speelman v. Indus. Comm. (1992),73 Ohio App.3d 757, this court noted that where claimants are unable to return to their former positions of employment, the commission may consider not only past employment skills but also those skills which may reasonably be developed and the commission may take into account claimant's failure to undergo rehabilitation or other training. Further, in State ex rel. Bowling v. Natl. Can Corp. (1996),77 Ohio St.3d 148, the court held that a claimant who is physically capable of sedentary or light work may be held accountable for their failure to further their education or to learn new skills in the time that has elapsed between his last employment and his application for PTD compensation.
{¶ 38} Relator was 53 years old when he last worked in 1987. The commission cited the above law, considered relator's narrow job search, his lack of participation in rehabilitation, and his failure to attempt academic remediation to be nonmedical factors affecting his eligibility for PTD compensation. The commission did not abuse its discretion by considering these factors especially in light of the fact that these were not the only factors relied upon by the commission in denying relator's application for PTD compensation. As such, this argument of relator's is not well-taken.
{¶ 39} Relator also challenges the commission's order because the commission relied upon Mr. Breslin and his opinions when Mr. Breslin had no actual contact with relator and certain abilities and characteristics noted by Mr. Breslin were not ascertainable from a vocational questionnaire. Relator also notes that there is an unexplained contradiction between Mr. Breslin's report and his answers to interrogatories which should disqualify the entire report as evidence. This argument focuses on Mr. Breslin's comments regarding whether relator could be placed in certain jobs and has already been addressed.
{¶ 40} The court has never required that a vocational expert personally interview claimant prior to rendering an opinion of the vocational potential of that claimant. In State ex rel. Humphrey v. Indus. Comm. (1997), Franklin App. No. 96APD09-1210, this court adopted a magistrate's decision and found that Ohio Adm. Code 4121-3-34 does not require that the vocational expert interview or examine the claimant. The magistrate noted that vocational evidence does not need to be gathered by a personal interview or by examination of the claimant. In fact, it is the commission's practice to require a PTD claimant to fill out a written vocational questionnaire which will then be used by the commission's vocational experts. This court's decision in Humphrey was affirmed by the Ohio Supreme Court in State ex rel. Humphrey v. Indus. Comm. (1998), 83 Ohio St.3d 360. As such, this argument of relator is likewise not well-taken.
{¶ 41} Relator also argues that the commission abused its discretion by not considering the report of his vocational expert. Relator points out that the commission did not list his vocational evidence as being considered in violation of State ex rel. Fultz v. Indus. Comm. (1994), 69 Ohio St.3d 327.
{¶ 42} The commission is required to cite the evidence upon which it relied. There is no requirement that the commission list all evidence considered. A Fultz violation only occurs when the commission sets out to enumerate all the evidence considered and omits some evidence which might be critical.
{¶ 43} The commission is the expert in evaluating vocational matters. State ex rel. Jackson v. Indus. Comm. (1997), 79 Ohio St.3d 266. The commission has the discretion to accept one vocational report while rejecting another. Id. Relator's argument is not well-taken.
{¶ 44} Lastly, relator contends that this court should issue a writ of mandamus compelling the commission to issue an order granting him PTD compensation pursuant to Gay. The prerequisite to award a claimant relief pursuant to Gay is a finding that the order in question violates the syllabus of Noll which requires that the commission must specifically state what evidence has been relied upon and briefly explain the reasoning for its decision. This magistrate finds that the commission's order satisfies the requirements of Noll.
{¶ 45} The commission specifically relied upon the report of Dr. Fletcher and found that relator was capable of performing light to sedentary work. The commission also relied upon Mr. Breslin's employability assessment report and his answers to interrogatories and explained why it found relator capable of performing sustained remunerative employment.
{¶ 46} Relator challenges the commission's order in part because it is a "cut-and-paste" copy of the former PTD order which, according to relator, evidences a failure to rehear the case properly upon remand from the Ohio Supreme Court. However, as stated previously, the commission was not required to rehear the matter in the first place. In the present case, a rehearing did occur. This hearing took place before the same hearing officer which heard relator's original application for PTD compensation. At first, relator challenged as improper having the same hearing officer hear the matter on remand. However, relator waived his right to challenge such when he decided to go forward with the hearing. A second hearing did take place and the commission has issued an order which complies with Noll. As such, the commission has done exactly what the court ordered the commission to do.
{¶ 47} In order to be entitled to a writ of mandamus pursuant to Gay, relator must also prove that the commission's order cannot possibly be justified. Gay relief is appropriate only where the evidence compels but one conclusion. Such is not the case in the present case. The commission relied upon evidence that relator was capable of performing light to sedentary work and, after evaluating the vocational factors, concluded that relator was capable of performing some sustained remunerative employment. Because the commission's order complies with the requirements of Noll, relator is not entitled to relief pursuant to Gay. As such, this argument of relator fails as well.
{¶ 48} Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion in denying his application for PTD compensation and this court should deny relator's request for a writ of mandamus.